IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK WHALING,                      :
                                   :
           *Plaintiff*             :
                                   :
    v.                             :      No. 1:08-cv-210
                                   :
                                   :
ERIE COUNTY PRISON, et al.,        :
                                   :
           *Defendants*            :      JURY TRIAL DEMANDED

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

AND NOW, come the Defendants, Eric County Prison, James Veshecco, Shawn Wilson, Mark Olowin, Joey Aganello, Eugene Ricci, Brian Ames, Craig Owens, Adam Johnson, Edward Yeaney, Robert Kremenik, Leslie Danowski, Thomas Loftus, Andrew Parks, and Willie Damper, by and through their attorneys, Marshall, Dennehey, Warner, Coleman & Goggin and Patrick M. Carey, Esquire, and support of the Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), aver as follows:

## I.     FACTUAL AND PROCEDURAL HISTORY

For a recitation of the factual and procedural history in the instant matter, please see the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    STANDARD FOR RULING ON MOTION TO DISMISS

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). In addition, documents that form the basis of the Plaintiff's claim, whether or not they are attached to the complaint, may be considered by the court without converting the motion to dismiss into a motion for summary judgment;

> In deciding motions to dismiss pursuant to Rule 12(b)(6), courts
> generally consider only the allegations in the complaint, exhibits
> attached to the complaint, matters of public record, **and
> documents that form the basis of a claim.** See In re Burlington
> Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997);
> Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998
> F.2d 1192, 1196 (3d Cir. 1993). A document forms the basis of a
> claim if the document is "integral to or explicitly relied upon in the
> complaint." Burlington Coat Factory, 114 F.3d at 1426 (emphasis
> omitted). The purpose of this rule is to avoid the situation where a
> plaintiff with a legally deficient claim that is based on a particular
> document can avoid dismissal of that claim by failing to attach the
> relied upon document. See Pension Benefit Guar. Corp., 998 F.2d
> at 1196. Further, considering such a document is not unfair to a
> plaintiff because, by relying on the document, the plaintiff is on
> notice that the document will be considered. See Burlington Coat
> Factory, 114 F.3d at 1426.

Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir.) (emphasis added), *cert. denied*, 543

U.S. 918 (2004) (emphasis added).

## POST-*TWOMBLY* CRITERIA FOR EVALUATING A RULE 12(B)(6) MOTION TO DISMISS

The United States Supreme Court recently redefined the meaning of federal notice

pleading in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). During the last many

decades, federal courts have been guided by Conley v. Gibson, 355 U.S. 41 (1957). Much of

Conley is, of course, sound doctrine and is retained by the Bell Atlantic Court. But Conley went

beyond what was necessary to decide that case in expressing the thought that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355

U.S. at 45-46. After an intensive analysis of this language, the Bell Atlantic Court discarded it,

holding that "after puzzling the profession for 50 years, this famous observation has earned its

retirement." Bell Atlantic, 127 S.Ct. at 1969.

Although the language "showing that the pleader is entitled to relief" in Fed. R. Civ. P.

8(a)(2) was often neglected in the post-Conley cases, the Bell Atlantic Court held that this

language is significant and must be followed:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations [citations omitted], **a
> plaintiff's obligation to provide the "grounds" of his
> "entitlement to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a
> cause of action will not do,** see Papasan v. Allain, 478 U.S. 265,
> 286 (1986) (on a motion to dismiss, courts "**are not bound to
> accept as true a legal conclusion couched as a factual
> allegation**"). **Factual allegations must be enough to raise a
> right to relief above the speculative level,** see 5 C. Wright & A.
> Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.
> 2004) (hereinafter Wright & Miller) ("**The pleading must contain
> something more . . . than . . . a statement of facts that merely
> creates a suspicion [of] a legally cognizable right of action**") . . .

Bell Atlantic, 127 S.Ct. at 1964-65 (emphasis added); see also Ashcroft v. Iqbal, 556 U.S. _

(May 18, 2009).

In reviewing a Motion to Dismiss, the Complaint must be read in the light most favorable

to the Plaintiff and all well-pleaded, material allegations in the Complaint must be taken as true.

Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). However, where, as here,

a Defendant moves to have the court dismiss the Plaintiff's entire action for failure to state a

claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(6) allows the

court to consider evidence when considering the Motion to Dismiss. When evidence is

submitted with a 12(b)(6) motion, the rules require the court to treat the Motion as a Motion for

Summary Judgment.[1]

---

[1]  In the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, the Defendants incorporated by
reference all of the documents and exhibits that they attached to their original Motion to Dismiss [Document #13] as
if fully restated.

The standards for this award of summary judgment under Federal Rule of Civil Procedure 56 are well known.  Summary judgment may be entered if:

> The pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact then the moving party is entitled to judgment as a matter of law.
>
> F.R.C.P. 56(c)

An issue is genuine "only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).

The party opposing a motion for summary judgment may not rely on mere allegations to defeat such a motion.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed. 2d 351 (1992).  In fact, the party opposing a motion for summary judgment must go beyond the pleadings and establish the existence of a genuine issue of material fact.  Id.

## III.   CLAIMS RAISED BY PLAINTIFF

Mr. Whaling claims that his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution were violated when officers of the Erie County Prison allegedly retaliated against him when he attempted to file a grievance regarding the adequacy of the medical care provided in the prison.  Whaling further alleges that prison officers used excessive and misuse of force and inflicted cruel and unusual punishment when they forcibly removed him from his cell by use of a prison extraction team and then placed him in a restraint chair where he was held for 15 ½ hours without being fed, using the bathroom, or being provided with his medications.  Whaling further alleges that he was deliberately denied adequate medical care by the Erie County Prison medical staff.  Finally, Whaling claims that he was physically assaulted and that the prison officials intentionally inflicted emotional distress during his extraction from his cell and placement in a restraint chair.

## IV.   LEGAL ANALYSIS AND ARGUMENT

### A.   1983 Actions

The Plaintiff may make a claim under 42 U.S.C. §1983 for certain violations of his

constitutional rights.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any state or territory . . . subjects
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . .

Thus, to state a claim for relief under §1983, a Plaintiff must allege, first, the violation of

a right secured by the constitution or laws of the United States and, second, that the alleged

deprivation was committed or caused by a person acting under color of state law.  Piecknick v.

Pennsylvania, 36 F.3d 1250, 1255-56 (3rd Cir. 1994).

### B.   First Amendment Retaliation Claims

The First Amendment offers protection for a wide variety of expressive activities.  See

U.S. Constitution Amendment I.  These rights are lessened, but not extinguished in the prison

context, where legitimate penalogical interests must be considered in assessing the

constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96

L.Ed. 2d 64 (1987).

Retaliation for expressive activities can infringe upon an individual's rights under the

First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3rd Cir. 2000).  To prevail on

a retaliation claim under 42 U.S.C. §1983, Plaintiff must demonstrate (1) that he was engaged in

protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that

there is a "causal link between the exercise of his constitutional rights and the adverse action

taken against him." Rauser v. Horn, 241 F.3d 330 (3rd Cir. 2001) (quoting Allah, 229 F.3d at 225).

As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected. Rauser, 241 F.3d at 333; see also Jerry v. Williamson, 211 F.Appx. 110 (3rd Cir. 2006). "While inmates do not forfeit all constitutional protections by reason of their conviction and confinement including those under the First Amendment . . ., lawful incarceration brings about withdrawal or limitation of privileges and rights for various reasons, including institutional security." Cooper v. Tard, 855 F.2d 125, 128 (3rd Cir. 1988); see also Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed. 2d 495 (1974) (stating that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penalogical objectives of the corrections system").

In the instant case, the Erie County Prison Inmate Handbook sets forth the general inmate classifications, the segregation and restrictive housing units for the prison, and the use of the prison's isolation room and restraint chair policies. (See Exhibit II, pages 16-19.) On page 17 of the Handbook, inmates are advised that they may be placed in security administrative segregation if they "present a risk of escape or **to control an inmate's behavior or to safeguard the inmate or others**." Inmates are also told that they may be placed in isolation if they "engage in conduct that involves **repeated failure to obey orders from correctional staff; verbal harassment of correctional staff** or other inmates; **disrespectful language or other language which creates a risk of a disturbance; or other disruptive conduct** that does not pose an immediate risk of physical violence but **which poses a serious risk to the prison's security and good order**." (See Exhibit II, page 17.) The isolation room policy is repeated on page 19 of the Prison Handbook. Additionally, the restraint chair policy is set forth on page 19 and states, **"You**

may be placed in a 'restraint chair' when you engage in conduct that involves actual physical violence toward yourself or others, or towards county property, or make direct threats of violence or otherwise indicate that you intend to engage in immediate violence of the same nature." (See Exhibit H, page 19.)

In the instant case, Mr. Whaling claims that prison officials retaliated against him because he wanted to exercise his right to file a grievance regarding the adequacy of medical care he received at the prison. In reality, Mr. Whaling was ordered by Sergeant Olowin to return to his cell, pack his belongings, and prepare for transfer to FF Pod after Whaling became belligerent and disrespectful with Sergeant Olowin, Counselor Damper, and Corporal Kremenik. Whaling then continued with his belligerent attitude by claiming he was going to sue everyone in the prison. When Whaling was escorted down the hallway toward FF Pod, he threw his bin of belongings onto the hallway floor, began waving his arms around in an aggressive manner, and told Sergeant Olowin to take him to the restricted housing unit for his own protection. Whaling was then removed to cell EE-2#9 after which he began yelling and punching the walls, bed and window of his cell. He also threatened the life of Correctional Officer Andrew Parks and then threatened Sergeant Olowin. Whaling's behavior escalated and continued with conduct that involved actual physical violence to himself, threats of violence to correctional officers, with physical contact with County property, all of which caused a disruption of the entire cell block. Because of his behavior, Whaling was then removed by the extraction team and placed in isolation. Even in isolation, Whaling's bizarre behavior continued to escalate. He was continuously threatening and belligerent towards prison officials. It was for these reasons that Whaling was strip searched and placed in the restraint chair. (See Exhibits C, D, and G.) Therefore, Whaling was not restrained because he attempted to exercise his First Amendment right to grieve, rather, Whaling was restrained because he abused prison policy, engaged in

conduct involving physical violence toward himself, threatened physical violence on correctional officers, was unruly and disruptive, refused to obey commands, and caused a disruption to the entire cell block. Based upon the foregoing, Mr. Whaling cannot establish the first element of a retaliation claim that he was engaged in a protected activity when he suffered an adverse action by government officials. Therefore, the Plaintiff's retaliation claim under the First Amendment should be dismissed with prejudice.

Even assuming that this Court finds that Mr. Whaling was engaged in a constitutionally-protected activity (free speech) at the time he suffered an adverse action, Whaling's First Amendment retaliation claim must fail because there is no causal link between the exercise of his constitutional right and the adverse action taken against him. For the reasons set forth above, the Defendants have established that they were following a legitimate prison regulation in removing the Plaintiff from general population and placing him in isolation and then the restraint chair. These actions were taken because of the Plaintiff's violent, aggressive and unpredictable behavior. Whaling's actions constituted a threat not only to himself, but to correctional officers and other inmates. "If a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one of the three-step retaliation analysis." Lockett v. Suardini, 526 F.3d 866 (6th Cir. 2008); quoting Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

The United States Supreme Court has incorporated a burden shifting framework for a First Amendment retaliation claim into the prison context. Accordingly, to show a causal link, a prisoner-plaintiff bears the initial burden of proving that his constitutionally-protected conduct was "a substantial or motivating factor" in the decision to discipline him. If he does so, the burden then shifts to the Defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity. Miney v.

Klem, 277 F.Appx. 239 (3rd Cir. 2008); see Mount Healthy Board of Education v. Doyle, 429

U.S. 274 (1977); Rauser v. Horn, *supra*.

Because Mr. Whaling cannot establish that he was engaged in a constitutionally-
protected activity when he was disciplined and also because the prison Defendants have
established by a preponderance that their actions were based upon valid penalogical interests and
pursuant to prison policy, the Plaintiff's First Amendment retaliation claim fails and should be
dismissed as a matter of law.

**C.     Eighth Amendment Claims of Excessive Use of Force and
        Cruel and Unusual Punishment**

The Eighth Amendment prohibits punishment that violates civilized standards of
humanity and decency, or involves the unnecessary and wanton infliction of pain.  See Estelle v.
Gamble, 429 U.S. 97, 102-03, 50 L.Ed. 2d 251, 97 S.Ct. 285 (1976).  To establish an Eighth
Amendment violation, a prisoner must demonstrate that he was deprived of the minimal civilized
measure of life's necessities.  Rhodes v. Chapman, 452 U.S. 337, 347, 69 L.Ed. 2d 59, 101 S.Ct.
2392 (1981).  This includes proving that the deprivation suffered was sufficiently serious and
that a prison official acted with deliberate indifference in subjecting him to that deprivation.
Griffin v. Vaughn, 112 F.3d 703 (3rd Cir. 1997).

In order to establish a constitutional violation based upon the conditions of confinement,
inmates must prove that the prison acted with deliberate indifference to deprive them of the
"minimal civilized measure of life's necessities."  In elaborating on this standard, the United
States Supreme Court stated that a constitutional violation will be found only when the
conditions of confinement "have a mutually enforcing effect that produces the deprivation of a
single identifiable human need such as food, warmth, or exercise," and that "nothing so
amorphous as overall conditions can rise to the level of such a violation when no specific
deprivation of a single human need exists."  Wilson v. Seiter, 501 U.S. 294, 303-04, 111 S.Ct.

2321, 115 L.Ed. 2d 271 (1991).  Verbal abuse or threats alone do not state a constitutional claim.

See Maclean v. Secor, 876 F.Supp. 695, 698 (E.D. Pa. 1995).  This is so because not every

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

punishment.  Ramos v. Vaughn, 1995 U.S. Dist. LEXIS 21644 (E.D. Pa. 1995); quoting Ivivey

v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987).  Where Plaintiff has not been physically assaulted,

Defendant's words and gestures alone are not of constitutional merit.  Wright v. O'Hara, 2004

U.S. Dist. LEXIS 15984 (2004).  The Constitution does not mandate comfortable prisons and

only prohibits conditions that unnecessarily and wantonly inflict pain, or that are grossly

disproportionate to the severity of the crime warranting imprisonment.  See, e.g. Rhodes v.

Chapman, 452 U.S. 337, 346-47, 349 (1981).  In order to prove an Eighth Amendment

conditions of confinement claim, an inmate must satisfy both an objective and subjective test.

See, e.g. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); Mohamed v. Donate, 2008 U.S. Dist.

LEXIS 6874 at *3 (M.D. Pa. Jan. 30, 2008).

First, an inmate must establish that the alleged conditions deprived him of the "minimal

civilized measures of life's necessities."  Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at

347.)  In other words, an inmate must prove he was denied a basic human need such as food,

clothing, shelter, sanitation, medical care, and personal safety.  See Pressley v. Johnson, 2008

U.S. App. LEXIS 5284 (3rd Cir. 2008); Daniel v. Chesney, 2005 U.S. Dist. LEXIS 25404 (M.D.

Pa. 2005).  The Supreme Court has explained that a Court must objectively determine whether

the alleged deprivation of the basic human need was extreme and sufficiently serious because

routine discomfort is part of the penalty that criminal offenders pay for their offenses against

society.  Rhodes, 452 U.S. at 347; Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Second, a Court must objectively determine if prison officials acted with a sufficiently culpable state of mind, which means that an inmate must demonstrate "deliberate indifference" to the prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Wilson, 501 U.S. at 297. "Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297.)

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate human conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . the Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'

Id. at 837.

Furthermore, "prison officials who act reasonably cannot be found liable under the cruel and unusual punishment clause." Id. at 845. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

In this circuit, when inmates bring claims concerning their time in restraints, those claims are analyzed as conditions of confinement claims. See Camp v. Brennan, 54 F.Appx. 78 (3rd Cir. 2002); Fuentes v. Wagner, 206 F.3d 335, 345 (3rd Cir. 2000).

In Camp, the Plaintiff, who had provoked a violent disturbance, **complained that his placement in four point restraints while naked for two days violated the Eighth Amendment.** Camp, 54 F.Appx. at 80. The Court reasoned that the Plaintiff's claim was properly analyzed as a conditions of confinement claim. Id. at 6. The Court then concluded that Plaintiff's claim failed because the evidence showed he was fed, that his clothes were removed to ensure he didn't have a weapon or contraband, not for the purpose of causing humiliation. Id. at 81.

In Fuentes, the Plaintiff complained that the pre-authorized **8 hours he stayed in a restraint chair** violated his constitutional rights, and the Court analyzed this claim primarily using a conditions of confinement analysis. Fuentes, 206 F.3d at 345. The Court found that the Plaintiff was not denied a basic human need nor were prison officials deliberately indifferent because (1) he was not kept in the chair any longer than authorized; (2) his physical condition was checked every 15 minutes; (3) he was released to stretch, exercise, and use the toilet; (4) he was given meals; and (5) he was examined by medical staff. Id. at 345. The Court ultimately concluded that the Defendants were entitled to Summary Judgment because Fuentes could not establish that prison officials used the restraint chair as a means of punishing (as opposed to controlling) him. Id. at 342. The Court found that the prison officials were not deliberately indifferent, that they did not act maliciously and sadistically to cause harm, and that Fuentes was not denied the minimal civilized measure of life's necessities. Id. at 345-346.

The case of Blakeney v. Dauphin County Prison, 2005 U.S. Dist. LEXIS 37991 is factually similar to the case at bar. In Blakeney, the Plaintiff claimed that prison officials violated his Eighth Amendment rights by improperly placing him in a restraint chair and by subjecting him to mace and verbal and physical abuse. At the time of his commitment to the Dauphin County Prison, Blakeney, like Mark Whaling, was recovering from various injuries and/or medical conditions. He then acted out while undergoing medical treatment and became violent and aggressive with correctional staff. He was transferred to a segregated prison cell with the use of a restraint chair. Blakeney was then initially **confined to the restraint chair for a 14 hour period of time**. Blakeney was then released from the restraint chair but again began to act up causing prison officials to **return him to the restraint chair for another 2 – 3 hours**.

The Court in Blakeney relied upon prison records including a number of videotapes of Blakeney in the restraint chair in rendering its decision. The Court found that Mr. Blakeney was continuously and systematically monitored by prison officials and medical staff during his time in the restraint chair. The Blakeney Court found that the amount of force used was reasonable "given the threat Plaintiff's behavior posed to his own safety, as well as the safety of the staff." The Court in Blakeney also found that the Plaintiff failed to provide any evidence that the prison Defendants acted maliciously and sadistically for the purpose of causing him harm rather than in a good faith effort to restore discipline and protect the Plaintiff's health. Based upon the foregoing, the Blakeney Court granted the prison Defendant's Motion for Summary Judgment.

In the instant matter, Mr. Whaling initially complained about the fact that he was given generic medications rather than those prescribed by his doctor at SCI Houtzdale. Whaling was then told by the prison counselor and later by Sergeant Olowin that he was not permitted to grieve this issue because they did not deem it grievable. Further, when Whaling was told that, pursuant to prison policy, Whaling would be required to submit a medical request slip in order to request to see the doctor, Whaling became belligerent with Sergeant Olowin. An argument ensued in which Whaling threatened to sue Olowin, Damper, and everyone in the prison. Based upon his disrespectful and belligerent tone, Whaling was then ordered to pack his belongings because he was going to be moved to FF Pod. Things escalated from there and Whaling threw down his bin of belongings on the hallway floor. Whaling was then placed in a cell block where he began yelling and punching the walls, bed and window of his cell. Plaintiff then started to threaten correctional officers including Andrew Parks and Sergeant Olowin. Whaling's behavior then became disruptive to the entire cell block. Further, his actions constituted a threat to his own well being and to that of the prison officials. Because of his unpredictable, aggressive and threatening and escalating behavior, Whaling was removed from his cell with an extraction team,

placed in an isolation cell where he was then strip searched to make sure that he had no weapons on him. In fact, when the extraction team first approached Whaling, Whaling came forward with a spoon in his right hand wrapped in a towel. He initially did not follow orders to drop the spoon until Whaling saw that one member of the extraction team had a pepper ball gun. Whaling then complied.

Although Whaling contends that the extraction team wrestled him to the ground and nearly broke his arm in the process, the videotape of the extraction reveals that very little force was used to cause Whaling to comply with the strip search and the removal from the cell. Further, Whaling was never taken to the ground and did not suffer or complain of suffering any physical injuries in the process. Further, although Whaling contends he was slammed into the restraint chair by a member of the extraction team with a protective shield, the videotape shows that Whaling was gently and slowly backed into the restraint chair by a correctional officer holding a shield.

During the process of Whaling's strip search, he became agitated, aggressive and confrontational. Prison officials were forced to give Whaling verbal commands repeatedly before he complied. Further, Whaling began striking himself in the face and head during this process. Because of his actions and non-compliance, Whaling was handcuffed and then backed into the restraint chair.

Although Mr. Whaling was nude when he was placed in the restraint chair, he was covered with a blanket to keep him warm. Further, the records show that after Whaling was secured in the restraint chair, his restraints were checked by a prison nurse who determined that they were not excessively tight and they did not interfere with his circulation. Further, Whaling was checked on a repeated and periodic basis by both the prison correctional and medical staff to ensure that he was comfortable and not in need of any medical attention. Those same prison

records reveal that Whaling was offered breaks from his time in the restraint chair in order to eat, stretch or use the bathroom. Whaling refused every opportunity to take a break for those purposes.

The most telling piece of evidence regarding Whaling's time in the restraint chair is the videotape that was taken by the correctional staff. Because the Plaintiff continuously yelled, screamed, made verbal threats and/or engaged in bizarre behavior such as singing, rambling, etc., prison staff placed a video camera in the cell with the Plaintiff. Mr. Whaling immediately responded by trying to spit on the camera thereby forcing the prison staff to place a spit shield over Whaling's head. Even with the spit shield in place, Mr. Whaling continued his bizarre, aggressive and violent behavior for approximately one hour on video. Further, according to prison records, Whaling's behavior in such a manner was continuous throughout the entire time that he was in the restraint chair.

At approximately 7:45 a.m. on July 27, 2006, Whaling was removed from the restraint chair and examined by the prison doctor. Thereafter, Whaling got dressed and was discharged from the Erie County Prison and placed in the custody of an Erie County Sheriff's Deputy for transfer to SCI Houtzdale. Upon his arrival at SCI Houtzdale, Whaling made a complaint to prison officials that he was physically abused by prison staff while in the Erie County Prison. He was examined in the state prison and later also examined by Trooper Mary Jane McGinnis who interviewed Mr. Whaling regarding his claims of abuse. Other than some bumps and bruises and swelling to the Plaintiff's hands, there has been no evidence produced by the Plaintiff that he sustained any injuries. Further, Whaling's injuries to his hands are consistent with him punching the walls, door and bed in his cell which occurred prior to his extraction.

Based upon the foregoing, it's clear that the use of the restraint chair by the Erie County Prison does not constitute cruel and unusual punishment or an excessive use of force by the Erie

County Prison Defendants. Rather, the nature and the amount of force used by the Erie County Prison officials constitutes a good faith use of physical force which was necessary to maintain prison security and discipline. Further, Whaling was placed in the restraint chair because he constituted a threat of injury to himself and others in the prison. The prison's restraint chair policy was followed by the staff. The only evidence presented reveals that prison officials used the restraint chair as a means of controlling Mr. Whaling, not a means of punishing him.

The Eighth Amendment prohibits punishments that involve the unnecessary and wanton infliction of pain, including inflictions of pain that are totally without penalogical justification. Lockett v. Suardini, 526 F.3d at 875; quoting Rhodes v. Chapman, 452 U.S. at 346. Our United States Appellate Courts have held that "in the prison context, good faith use of physical force may be necessary to maintain prison security and discipline." Lockett v. Suardini, 526 F.3d at 875, citing Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992). Our Supreme Court has explained that:

> [W]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses a significant risk to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

An absence of serious injury is relevant to the Eighth Amendment inquiry, but does not end it. This analysis must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable post-hoc judicial second-guessing. Lockett at 875; Hudson v. McMillian, 503 U.S. at 7; Parrish v. Johnson, 800 F.2d 600, 605 (6th Cir. 1986).

All of the actions taken in the instant case are identical to those that were taken and approved by the Court in Camp, Fuentes and Blakeney. In addition to these cases, other Courts have recognized that the use of restraints will be constitutional when, inter alia, the reason for the restraints is permitted by law and when inmates are checked by medical personnel, observed, permitted to stretch, eat, and go to the bathroom, which is the exact procedure and policy followed by the Erie County Prison Defendants. See, e.g. French v. Owens, 777 F.2d 1250 (3rd Cir. 1985); Hadix v. Caruso, 461 F.Supp. 2d 574 (W.D. Mich. 2006); Ferola v. Moran, 622 F.Supp. 814 (D. R.I. 1985); Stewart v. Rhodes, 473 F.Supp. 1185 (S.D. Ohio 1979); Inmates, D.C. Jail v. Jackson, 416 F.Supp. 119 (D.D.C 1976).

As stated above, Mr. Whaling was placed in restraints because his behavior constituted a threat to his own well being and to that of prison staff. Whaling was punching the interior of his cell, including his door, bunk and window. He had also threatened prison staff and had a spoon in his hand, which was wrapped with a towel, and held it in an aggressive manner when the guards entered his cell. Although he was restrained in an attempt to prevent Whaling from hurting himself, his behavior did not settle down during the time he was in the restraint chair. Nonetheless, this use of force by the Erie County Prison Defendants was necessary, done in good faith, was based upon a reasonable penalogical objective and was in conformance with the Erie County Prison policy. Based upon the foregoing, Plaintiff has failed to state an Eighth Amendment claim for excessive use of force or cruel and unusual punishment and these allegations should be dismissed with prejudice.

To determine whether the actions of correctional officers constituted excessive force in violation of the Eighth Amendment, Federal Courts look to the following factors: (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff

-17-

and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Camp v. Brennan, 54 F.Appx. at 80; quoting Brooks v. Kyler, 204 F.3d 102, 106 (3rd Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986). The central question in such a claim is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Id. (quoting Hudson v. McMillian, 503 U.S. at 7 (1992)).

The use by the Erie County Prison of an extraction team to forcibly remove Mr. Whaling from his cell, the force that was used to effectuate a strip search of Mr. Whaling, and the force that was used to put Mr. Whaling into a restraint chair was not excessive as is confirmed by the videotape (Exhibit F) produced by the Defendants. Additionally, such force was applied in a good faith effort to maintain or restore discipline and control of the prison not for the reason to maliciously or sadistically cause harm to Mr. Whaling. As has been stated throughout this Brief, Mr. Whaling's behavior was disrespectful, threatening, aggressive, and disruptive. Whaling's behavior was also escalating and increasingly hostile. He was refusing commands given to him by prison staff, he had threatened to harm and/or kill various members of prison staff and he therefore constituted a genuine threat to all those around him. Based upon the foregoing, the Defendants did not use excessive force in extracting or controlling Mr. Whaling during this incident. Therefore, this claim should be dismissed.

### D.    Eighth Amendment Medical Claim

Although these claims are directed at the prison medical staff, they will be addressed herein only to the extent that they may be interpreted as being directed to the Erie County Prison or any of its employees.

The Eighth Amendment prohibits punishment that violates civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. See Estelle v. Gamble, 429 U.S. 97, 102-03, 50 L.Ed. 2d 251, 97 S.Ct. 285 (1976). To establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of the minimal civilized measure of life's necessities. Rhodes v. Chapman, 452 U.S. 337, 347, 69 L.Ed. 2d 59, 101 S.Ct. 2392 (1981). This includes proving that the deprivation suffered was sufficiently serious and that a prison official acted with deliberate indifference in subjecting him to that deprivation. Griffin v. Vaughn, 112 F.3d 703 (3rd Cir. 1997).

The United States Court of Appeals for the Third Circuit evaluates indifference to medical treatment claims under the Deliberate Indifference standard under Estelle v. Gamble, supra, and Boring v. Kozakiewicz, 833 F.3d 468 (3rd Cir. 1987). According to the Estelle decision, the denial of medical treatment represents cruel and unusual punishment if it constitutes the "unnecessary and wanton infliction of pain." In Estelle, the Supreme Court held that the deliberate indifference to the serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. Estelle v. Gamble, supra. Deliberate indifference has also been described as exposing a person to "undue suffering or the threat of tangible, residual injury." Monmouth County Correction Institutional Inmates v. Lanzaro, 834 F.2d 326 (3rd Cir. 1987).

In order to state a constitutional claim in the context of medical treatment, a prison inmate must allege facts to reasonably support the following two elements: (1) that the inmate suffered from a "serious medical need," and (2) that prison officials were "deliberately indifferent" to the serious medical need in question. Nicini v. Morra, 212 F.3d 798 (3rd Cir. 2000), citations omitted. Both elements must be proven in order for the inmate to prevail. Monmouth v. Lanzaro, supra.

In interpreting these two elements, the United States Supreme Court has held that a Defendant is "deliberately indifferent" to a serious medical need where he or she knows of, yet disregards, an excessive risk to the Plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). Claims of negligence or even medical malpractice do not rise to the level of deliberate indifference to a serious medical need. Rouse v. Plantier, 182 F.3d 192 (3rd Cir. 1999). Rather, it is "obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishment Clause . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986). Indeed, the very concept of "serious medical need" requires that the Plaintiff's condition be such that a failure to treat can be expected to lead to "substantial and unnecessary suffering, injury, or death." Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3rd Cir. 1991).

Courts are not to intervene upon allegations of negligence, mistake, or a difference in medical opinion and will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3rd Cir. 1979) quoting Bowing v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977); see also Estelle, 429 U.S. at 107-108 (holding that a medical decision not to order an x-ray, or like measures does not represent cruel and unusual punishment).

Disagreements as to the appropriate choice of medical treatment do not give rise to a constitutional violation; an inmate's right to be free from cruel and unusual punishment does not include the right to receive the treatment of one's choice. Young v. Quinlan, 960 F.2d 351, 358 n18 (3rd Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under §1983); White v. Napoleon, 897 F.2d 103, 110 (3rd Cir. 1990). Disagreements over how to treat an illness do not implicate the Eighth

Amendment.  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3rd Cir. 1976)
(finding that once it is shown that Plaintiff received some care, complaints directed at the
wisdom or quality of the medical care received from medical personnel will not state an Eighth
Amendment violation under §1983, even if treatment was negligent as to amount to malpractice).

Based upon the foregoing, the Plaintiff has failed to establish the deliberate indifference
required to state a valid claim under the Eighth Amendment with respect to the medical care he
received by the prison medical staff while an inmate at the Erie County Prison and, therefore,
this claim should be dismissed.

### E.    Fourteenth Amendment

Although Mr. Whaling does not explain or expound upon his alleged Fourth Amendment
claim, the Defendants believe that Mr. Whaling is alleging that his confinement in the restraint
chair violated the Fourteenth Amendment of the United States, which applies to pretrial
detainees.  However, Whaling was under sentence at the time of this incident and had merely
been transferred to the Erie County Prison so he could attend a post-conviction hearing at the
Erie County Courthouse.  Because he was not a pretrial detainee, see Bell v. Wolfish, 441 U.S.
520 (1979), Mr. Whaling's claims should be considered under the cruel and unusual punishment
standard of the Eighth Amendment.

To assert a due process claim, a Plaintiff must identify the denial of a liberty interest.
See Sandin v. Conner, 515 U.S. 472 (1995).  However, no protected interest in a particular
custody status is provided by the Constitution.  See Montanye v. Haymes, 427 U.S. 236, 242
(1976). As long as the conditions or degree of confinement to which the prisoner is subjected is
within the sentence imposed upon him and is not otherwise violative of the Constitution, the due
process clause does not in itself subject an inmate's treatment by prison authorities to judicial

oversight. Montanye, 427 U.S. at 242. Therefore, based upon the foregoing, the Fourteenth Amendment claim should be dismissed as a matter of law.

### F.    Mr. Whaling has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act

The instant civil rights lawsuit should be dismissed because federal law prohibits a §1983 action to be initiated by an inmate regarding prison conditions unless and until the inmate has exhausted administrative remedies available under the prison system. Specifically:

> No action shall be brought with respect to prison conditions under §1979 of the revised statutes of the United States (42 U.S.C. §1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.S. §1997e (a).

The United States Supreme Court has upheld the prohibition on prisoner lawsuits under §1983 where the prisoner has not exhausted administrative remedies. In fact, the Supreme Court upheld a decision by the Court of Appeals for the Third Circuit in which the Court found that an inmate who was seeking only monetary damages was required to complete a prison administrative procedure before filing a §1983 action even though the prison's administrative process could not award monetary relief. See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed. 2d 958 (2001). In February of 2002, the United States Supreme Court, applying 42 U.S.C.S. §1997e (a) held that requirement that an inmate exhaust administrative remedies applies to all inmates' suits regarding prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed. 2d 12 (2002).

The Plaintiff is considered a "prisoner" under the PLRA if he was "a prisoner confined in any jail, prison, or other correctional facility" on the date he brought the instant claim. Ahmed v. Dragovich, 297 F.3d 201 (3rd Cir. 2002). The law also clearly states that a Plaintiff who was

imprisoned at one facility when a §1983 claim accrued but who brought the claim after being transferred to or imprisoned in another facility is subject to the PLRA's exhaustion requirement. Claudio v. Rodriquez-Mateo, 292 F.3d 31 (1st Cir. 2002); Estrella v. Hogsten, 2007 U.S. Dist. LEXIS 51208 (M.D. Pa. 2007).

In the instant matter, although Mr. Whaling was transferred back to the State Correctional Institution at Houtzdale following his release from the restraint chair and examination by the prison doctor, Mr. Whaling never filed any type of grievance under the State Correctional Institution's formal grievance procedure. (See Exhibit A, paragraph 5.) Therefore, Whaling has failed to exhaust his administrative remedies as is required under the Prison Litigation Reform Act and, therefore, his lawsuit, in its entirety, should be dismissed with prejudice.

### G. Monell and Respondeat Superior Claims

In the instant case, the claims asserted by the Plaintiff against the Erie County Prison and/or Warden James Veshecco are subject to dismissal because local government units and supervisors are not liable under §1983 solely on a theory of *respondeat superior*. Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2nd 611 (1978). (Municipal liability attaches only "when execution of a government's policy or custom, whether made by its law makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of.) A Defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1988).

Based upon the foregoing, there are no allegations of personal involvement sufficient to constitute personal liability with respect to claims made against Defendants Andrew Parks, Eugene Ricci, Willie Damper, or James Veshecco and, therefore, all claims against these Defendants should be dismissed. Further, all claims against the "John Doe Officers of the Prison Emergency Response Team" should be dismissed as well. Finally, all claims against the Erie County Prison should be dismissed.

### H.   The Defendant is immune from suit under the Doctrine of Qualified Immunity

In addition to the above, the Defendants are immune from suit under the Qualified Immunity Doctrine.

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a Qualified Immunity defense must be considered in proper sequence. Where the Defendant seeks Qualified Immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified Immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Saucier v. Katz, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001); citations omitted.

A Court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. Id; quoting Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991).

If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. Saucier v. Katz, 121 S.Ct. at 2156. If, on the other hand, a violation could be established, the next step is to ask whether the right was clearly established. The Court has stressed that in order for the right to be relevant to

the case under consideration, the right the official is alleged to have violated must be clearly established in a particularized sense; that is, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. It is only when the right allegedly violated is defined with appropriate specificity that a Court can determine if it was in fact clearly established. Id. The dispositive inquiry in whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If a reasonable officer would have known that his or her conduct violated the right, then the defendant officer is not entitled to qualified immunity for his or her actions. Harlow v. Fitzgerald, 457 U.S. 800, 813-20, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982).

The Court in Saucier v. Katz, *supra*, emphasized:

> That the right the official is alleged to have violated must have been clearly established in a more particularized and hence more relevant sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based upon qualified immunity is appropriate.

Saucier v. Katz, 121 S.Ct. at 2156-57, see Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.")

Under the objective test for Qualified Immunity, the Plaintiff must demonstrate that a reasonable official confronted with the specific acts at issue and the law in effect at the time would have known that his conduct violated a Plaintiff's constitutional right. Schertz v. Waupaca County, 875 F.2d 578 (7th Cir. 1989). The Doctrine of Qualified Immunity protects government officials as long as it was objectively reasonable for them to believe their conduct

did not violate any constitutional rights.  Anderson v. Creighton, 483 U.S. 635, 97 L.Ed. 2d 523, 107 S.Ct. 3034 (1987).

The United States Supreme Court recently overruled the two-step qualified immunity procedure of Saucier.  "On reconsidering the procedure in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 2009 U.S. LEXIS 591 (2009.

Based upon the foregoing, the Defendants are entitled to qualified immunity from suit with respect to the claims made by the Plaintiff.  None of the Defendants violated any of Plaintiff's constitutional rights and therefore are entitled to qualified immunity.  Therefore, the Plaintiff's claims should be dismissed.

 **1.** **Any claims made under state law including claims for assault and battery, intentional infliction of emotional distress or other state law tort claims should be dismissed because the Defendants are entitled to immunity under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §8541 *et seq.***

Under Pennsylvania law, political subdivisions and local agencies and the employees thereof, enjoy the protection of immunity pursuant to the Political Subdivision Tort Claims Act (hereinafter the "Act), 42 Pa. C.S.A. § 8541 – 8564.  The Act provides immunity to local agencies.  The Act states that:

> Except where otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S.A. § 8541.

The Act allows plaintiffs to bring action only under specific circumstances. Section 8542 sets forth the conditions necessary to bring action against a local agency under the Act. Subsection (a) states that:

(a) **Liability imposed** -- A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

    (1)    The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under § 8541 or § 8546; and

    (2)    The injury was caused by the negligent acts of the local agency or an employee thereof acting within the office or duties with respect to one of the categories listed in subsection (b).

Subsection (a) (2) states that liability may be imposed on the local agency only for negligent acts. Petula v. Mellody, 158 Pa.Cmwlth. 212, 217, 631 A.2d 762, 765 (1993). The negligent acts for which a political subdivision may be held liable are enumerated in subsection (b). These eight exceptions to immunity, enumerated in the Act, include: (1) vehicle liability, (2) care, custody or control of personal property, (3) the care, custody or control of real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. 42 Pa. C.S.A. § 8542 (b). Pennsylvania courts consistently give these exceptions a very narrow construction in order to carry out the legislative intent to provide political subdivisions with immunity. Walsh v. City of Philadelphia, 526 Pa. 227, 585 A.2d 445 (1991).

None of the exceptions to immunity apply in this matter and, therefore, Plaintiff's claims should be dismissed.

In addition to the above, the Plaintiff's alleged injuries and damages are not the types of damages that are recoverable under the Political Subdivision Tort Claims Act. The Act provides in pertinent part:

§8553 Limitation on Damages.

(a)     General rule. - - Actions for which damages are limited by reference to this subchapter shall be limited as set forth in this section.

(b)     Amounts recoverable. - - Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000.00 in the aggregate.

(c)     Types of losses recognized. - - Damages shall be recoverable only for:

(1)     past and future loss of earnings and earning capacity.

(2)     pain and suffering in the following instances:

(i)     death; or

(ii)    **only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.00.**

(3)     medical and dental expenses including the reasonable value of reasonable and  necessary medical and dental services, prosthetic devices  and necessary ambulance, hospital, professional, nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the Claimant.

(4)     loss of consortium.

(5)     loss of support.

(6)     property losses.

(d)     Insurance benefits. - - If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

42 P.C.S. §8553. (emphasis added)

Clearly, the injuries and damages claims by Mr. Whaling are not the type of damages a person can recover against municipal defendants. There are no allegations that Plaintiff sustained permanent loss of bodily function, permanent disfigurement or permanent dismemberment or that he incurred any medical or dental expenses. Therefore, Plaintiff can not recover against the Defendants and his claims should be dismissed.

**J.      Plaintiff's claims of intentional conduct under Pennsylvania tort law must be dismissed under Pennsylvania's six-month statute of limitations regarding claims of intentional conduct by government officials**

Pennsylvania law provides that the statute of limitations for claims arising out of willful misconduct by a government official must be brought within six months of their occurrence. See Stoppie v. Johns, 720 A.2d 808 (Pa.Cmwlth. 1998); 42 Pa.C.S. §5522(b)(1).

The relevant portion of 42 Pa.C.S. §5522(b)(1) provides:

(b)  Commencement of action required. – The following actions and proceedings must be        commenced within six months:

(1)  An action against any officer of any government unit for anything done in the execution of his office, except an action subject to another limitation specified in this subchapter. 42 Pa.C.S. § 5521(b)(1).

In the Stoppie case, the Commonwealth Court analyzed federal court decisions interpreting the above statute of limitations as well as 42 Pa.C.S. 5524, which provides a two-year statute of limitations for most personal injury and trespass actions. The Court applied the two-step analysis used by federal courts wherein the "courts first identify the facts underlying the complained-of state action. If the state has provided a statute of limitations for the specific conduct at issue, then that specific limitation period applies. Where, however, the state activity which forms the basis of the claim does not admit to any specific limitation period, then

reference must be made to §5521(b)(1) and the six-month limitation contained therein." Stoppie
v. Johns, 720 A.2d. at 811.

The Stoppie Court concluded that the tortious conduct of the sewer enforcement officer
was alleged to be willful misconduct, which was specifically listed within 42 Pa.C.S.§5247(7).
However, the Court concluded that "§5247(7), by its terms, is not applicable to claims against a
government officer based upon negligence or tortious conduct because §5247(7), unlike
§5247(1)-(6), provides limiting language which states that the two-year statute of limitations is
applicable 'except [in] an action or proceeding subject to another limitation specified in this
subchapter.' **Thus, because §5522(b)(1) provides a different limitation period for
accusations against government officers, it is applicable**...Accordingly, the order of the trial
court is affirmed as Appellants' **claim of willful misconduct is subject to the six-month statute
of limitations** contained in 42 Pa.C.S. §5522(b)(1)." Id. (emphasis added)

Based upon the forgoing and since the Plaintiff failed to bring his claims of willful
misconduct against the Defendant government officials within six months of their alleged
occurrence, all such claims should be barred by the statute of limitations.

**K.      Amendment of Plaintiff's Claims Would Be Futile**

Mr. Whaling has filed an Original and a First Amended Complaint. He has been
provided with a copy of the Defendants' records, notes, and documents regarding this incident
and has been given more than an adequate opportunity to set forth his claims. The allegations in
his Amended Complaint are nearly identical to that in the Original Complaint with the exception
that Mr. Whaling has now set forth the names of the alleged parties involved in this incident.
Based upon the foregoing defenses and the records produced by the Defendants, any further
amendment of the Plaintiff's claims would be futile and should not be permitted.

WHEREFORE, for the reasons set forth above, the Defendants respectfully request an

Order from this Honorable Court granting the Defendants' Motion to Dismiss and dismissing the

Plaintiff's claims, in their entirety, with prejudice.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN**

By: _____

Patrick M. Carey, Esquire
PA ID # 50171
717 State Street - Suite 701
Erie, PA 16501
(814) 480-7803

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK WHALING, | : | |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | No. 1:08-cv-210 |
| | : | |
| | : | |
| ERIE COUNTY PRISON, et al., | : | |
| | : | |
| *Defendants* | : | JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within Brief in

Support of Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of

Civil Procedure 12(b)(6) was mailed to the following listed below this _22ND_ day of May, 2009

by electronic filing, courthouse box or United States First Class mail, postage pre-paid.

Mark Whaling
FW-9846
SCI-Frackville
1111 Altamont Boulevard
Frackville, PA 17931

Alan S. Gold, Esquire
GOLD & FERRANTE
261 Old York Road
Suite 526
Jenkintown, PA 19046

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: _____
Patrick M. Carey, Esquire

16/166968.v1