**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK WHALING,** | ) | **C.A. No. 08-210 Erie** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| **ERIE COUNTY PRISON, et al.,** | ) | |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that:

1.     Defendants Hillkirk and Patty's Motion to Dismiss Amended Complaint [Document # 22] be granted;

2.     The Motion to Dismiss Amended Complaint filed on behalf of Defendants Erie County Prison, Veshecco, Wilson, Olowin, Aganello, Ricci, Ames, Owens, Johnson, Yeaney, Kremenik, Danowski, Loftus, Parks, and Damper [Document # 25] be granted; and

3.     The case be marked as closed.

**II.     REPORT**

**A.     Relevant Procedural History**

On July 24, 2008, Plaintiff Mark Whaling, a prisoner formerly incarcerated[1] at the Erie

County Prison in Erie, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983

against:  Erie County Prison ("ECP"); James Veshecco, Warden at ECP ("Veshecco"); Shawn

Wilson, corrections officer at ECP ("Wilson"); Mark Olowin, Sergeant at ECP ("Olowin");

Bridget Hillkirk, a nurse contracted to provide medical services to prisoners at ECP ("Hillkirk");

Joey Aganello, a corrections officer at ECP ("Aganello"); Eugene Ricci, a corrections officer at

---

[1]

Plaintiff is currently incarcerated at the State Correctional Institution at Frackville, Pennsylvania.

ECO ("Ricci"); and several unnamed John and Jane Doe Defendants.  [Document # 3].  Plaintiff subsequently filed an Amended Complaint on March 27, 2009, identifying the previously unnamed John and Jane Doe Defendants as:  Brian Ames, a corrections officer at ECP ("Ames"); Craig Owens, a corrections officer at ECP ("Owens"); Adam Johnson, a corrections officer at ECP ("Johnson"); Edward Yeaney, a corrections officer at ECP ("Yeaney"); Robert Kremenik, a corrections officer at ECP ("Kremenik"); Leslie Danowski, a corrections officer at ECP ("Danowski"); Thomas Loftus, a corrections officer at ECP ("Loftus"); Andrew Parks, a corrections officer at ECP ("Parks"); and Willie Damper, a prison counselor at ECP ("Damper"). In addition, Plaintiff added a new Defendant identified only as "Patty," a psychiatric nurse contracted to provide medical services to prisoners at ECP ("Patty").  For convenience, Defendants Hillkirk and Patty will be collectively referred to as "Medical Defendants," and all other Defendants will be collectively referred to as "ECP Defendants."

Plaintiff claims that the Medical Defendants, as well as the ECP Defendants, were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. In addition, Plaintiff claims that the ECP Defendants subjected him to "physical brutality and misuse of excessive force," and "cruel and unusual punishment," in violation of his Eighth Amendment rights, and in retaliation for his attempt to exercise his right to file a grievance. Plaintiff also raises state law claims of assault and battery, negligence, and the intentional infliction of mental and emotional distress.  As relief for his claims, Plaintiff seeks monetary damages.

On April 29, 2009, the Medical Defendants filed a motion to dismiss amended complaint, arguing that Plaintiff's claims against Defendant Patty are barred by the applicable statute of limitations, and that Plaintiff has failed to state a claim against Defendant Hillkirk upon which relief may be granted. [Document # 22].  The ECP Defendants filed their own motion to dismiss amended complaint on May 21, 2009, arguing, *inter alia*, that Plaintiff has failed to state a claim against them upon which relief may be granted. [Document # 25].

In support of their motion to dismiss, the ECP Defendants submitted a number of exhibits, generally consisting of various prison documents, medical records, reports from the

Pennsylvania State Police and Erie County Sheriff's Office, and a DVD of Plaintiff's extraction and placement in the restraint chair.  Due to the ECP Defendants' reliance upon documents outside of the pleadings of record, some of which also pertain to the Medical Defendants' motion, the Court issued an Order on October 30, 2009, providing notice to Plaintiff of its intent to treat both motions to dismiss as summary judgment motions under Rule 56 of the Federal Rules of Civil Procedure, and giving Plaintiff until November 16, 2009, to file a response to both motions, with supporting documentation.  To date, however, Plaintiff has failed to file any response to either motion within the time allotted.  This matter is now ripe for disposition.

> **B.**    **Relevant Factual History**

On or about July 3, 2006, Plaintiff suffered a heart attack while he was incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania ("SCI-Houtzdale").  As a result, Plaintiff underwent surgery to have "metal stints" implanted in his arteries, and he was prescribed a "specific medication regimen." (Amended Complaint at ¶ 9).  Approximately ten days after the surgery, Plaintiff was transferred temporarily to ECP for purposes of attending a re-sentencing hearing at the Erie County Court House. (Id. at ¶ 10).  Shortly after arriving at ECP, Plaintiff experienced chest pains and was sent to the medical department, at which time he informed the medical staff about his recent heart attack and surgery. (Id. at ¶ 11).

During the time period from July 17-19, 2006, Plaintiff experienced several post-surgery symptoms, including severe chest pains, breathing difficulty, hypertension, and acid reflux, for which he was seen by the medical staff. (Id. at ¶ 13).  On July 20, 2006, Plaintiff continued to experience severe chest pains and was sent to the medical department for a "vital sign check," at which time Plaintiff requested the medication that was prescribed by his heart surgeon; however, he was informed by medical staff that the medical department at SCI-Houtzdale had only sent with him a one-week supply of the medication, which had run out. (Id. at ¶ 14).  As a result, Plaintiff was offered alternative medication, which he refused.  Plaintiff then insisted on being provided the exact medication his heart surgeon had prescribed, but the medical department denied his request and returned him to his housing unit "without adequate treatment." (Id. at

¶ 15).

On or about July 25, 2006, Plaintiff submitted a request slip to Defendant Damper asking for a grievance form so he could file a grievance against medical staff for denying him "adequate medical care." (Id. at ¶ 16).  On July 26, 2006, Plaintiff was summoned to Defendant Damper's office, at which time Defendant Damper allegedly informed Plaintiff that being denied medical care was not a grievable issue and, thus, Plaintiff was denied a grievance form. (Id. at ¶ 17). Plaintiff reiterated his request to Defendant Olowin, who also allegedly told Plaintiff that being denied medical care was not a grievable issue. (Id. at ¶ 18).  Plaintiff then insisted that he wanted to exercise his right to file a grievance, at which time Defendant Olowin allegedly "became agitated, verbally aggressive, and confrontational," and ordered Plaintiff "to go pack [his] property, [because he was] going to be transferred to the maximum housing unit.'" (Id. at ¶ 19). Plaintiff replied that he was afraid for his safety in the maximum housing unit and asked to be placed in the protected custody housing unit. (Id. at ¶ 20).  In response, Defendant Olowin allegedly "became very angry," handcuffed Plaintiff, and "physically assaulted the Plaintiff en route to the protective custody housing unit by dragging, punching, and slamming the Plaintiff against the wall causing him to hit his head." (Id. at ¶ 21-22).

Approximately thirty minutes after Plaintiff was placed in protective custody, Defendant Olowin returned to Plaintiff's cell with the Cell Extraction and Emergency Response Team, comprised of Defendants Ames, Johnson, Owens, Loftus, Yeaney, Kremenik, and Danowski, all of whom were dressed in body armor and carrying batons, shields, and chemical mace. (Id. at ¶ 24).  Plaintiff was then handcuffed, escorted to the gymnasium, and ordered to strip down, at which time Defendant Olowin allegedly ordered the extraction team to "take Plaintiff down." (Id. at ¶¶ 25-26).  Plaintiff claims that he "was then wrestled by excessive force inflicted by the cell extraction team, nearly breaking the plaintiff's arm handcuffing him without any resistance on behalf of the plaintiff, who was totally nude." (Id. at ¶ 27).  Defendant Olowin then ordered the extraction team to place Plaintiff in a restraint chair, which Defendants allegedly did by "us[ing] a protective shield in a slamming like motion" to force Plaintiff into the chair. (Id. at ¶ 28).  Plaintiff alleges that the Defendants "strapped and cuffed [him] to the "Restraint Chair" in

such a manner that the restraints cut off the circulation through his arms and legs," and then "wheeled [him] into the isolation cell face forward forcibly injuring [his] left hand because the chair barely cleared the entrance of the doorway." (Id. at ¶ 29).

According to Plaintiff, he was strapped in the restraint chair for approximately 15½ hours, during which time he "was mentally and physical [sic] abused, threatened, and at no time was the Plaintiff feed [sic], given his prescribed medication, [or] allowed to used [sic] the bathroom." (Id. at ¶ 32).  Defendant Aganello then "wheeled" Plaintiff to the intake unit and placed in an "ice cold" cell to await transport back to SCI-Houtzdale, which occurred on July 27, 2006.

### C.     Standards of Review

#### 1.     Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 95 (2007).  ☐ complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is

plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, ___ F.3d. ___, ___, 2009 WL 2501662, at * 4-5 (3d Cir. Aug. 18, 2009).

### 2.   Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Id.

 A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

 The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

 A material fact is a fact whose resolution will effect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for

summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon
bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v.
DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute
about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return
a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards
than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If
the court can reasonably read pleadings to state a valid claim on which the litigant could prevail,
it should do so despite failure to cite proper legal authority, confusion of legal theories, poor
syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v.
MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552,
555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read
"with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992);
Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal
pleading rules, a district court should construe all allegations in a complaint in favor of the
complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d
63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land
Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this
Court will consider facts and make inferences where it is appropriate.

### D. **Discussion**

### 1. **Defendant Hillkirk**

Defendant Hillkirk seeks dismissal of Plaintiff's claims against her, asserting that
"Plaintiff has not actually identified any action or omission by Hillkirk that violated his
constitutional rights." (Document # 23, Medical Defendants' Brief, at unnumbered p. 4).  In
particular, Defendant Hillkirk contends that "there is no way to tell to whom Plaintiff refers

when he contends that 'medical' ran out of his medication and offered an alternative prescription," and that, "absent specific allegations against Hillkirk, Plaintiff cannot make out a § 1983 claim against her." (Id. at unnumbered p. 5). The Court disagrees.

In his original complaint, Plaintiff identifies Defendant Hillkirk as "Nurse Bridget," and alleges that, "at all times material to this complaint," she, along with other unidentified members of ECP's medical staff, "was responsible for the medical screening, care, and treatment of the prisoner's medical needs, including but not limited to dispensing inmate[']s medications." (Complaint at ¶ 7). Based on this description of Defendant Hillkirk's alleged involvement in Plaintiff's medical care, it may be presumed that all allegations asserted against "medical staff" and/or the "medical dept" implicitly pertain to Defendant Hillkirk, as well. Moreover, Plaintiff specifically implicates Defendant Hillkirk ["Nurse Bridget"] in his Eighth Amendment claim based upon "deliberate denial of medical care," set forth in Count I of his Amended Complaint, as follows:

> 35.   Defendant(s) Nurse Bridget, Nurse Patty, and the prison Doctor, in 'deliberate denial of serious medical care were acting in their individual, as well as, their official capacities, and at all times material hereto, acted under the color of state law.
>
> 36.   The Defendants listed above action "deliberately denied Plaintiff adequate medical care, for his serious medical needs" in violation of the Plaintiff's constitutional[ly] protected rights, and constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution.
>
> 37.   The Defendants listed above all knew of the serious danger to the Plaintiff if his medical condition went untreated, yet failed to treat the Plaintiff's condition in an appropriate manner.

(Amended Complaint at ¶¶ 35-37).

Thus, Plaintiff has set forth enough allegations against Defendant Hillkirk to state a claim upon which relief may be granted. Nonetheless, having decided to treat the pending motions to dismiss as motions for summary judgment, the Court finds that the medical records submitted by the DOC Defendants fail to support Plaintiff's allegations of deliberate indifference.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.

Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need,[2] and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury"  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  Durmer, 991 F.2d at 67 (citations omitted).

Here, the medical records disclose that Plaintiff was seen by medical staff on, at least, six occasions during his brief two-week stay at ECP. (See Document # 13, Exhibits M and N). During these visits, Plaintiff's vital signs were checked and it was noted that he was "not showing overt signs of distress." (See Document # 13, Exhibit M at p. 1).  On July 20, 2006, it was noted that Plaintiff had been without his prescription of Prilosec for two days, because SCI-Houtzdale only transferred a five-day supply of the medication with him. (Id.).  As a result, the prison doctor wrote Plaintiff a prescription for Zantac; however, Plaintiff refused to have the prescription filled because he wanted Prilosec.

Based on the foregoing record, it is evident that Plaintiff was receiving regular medical attention for his ailments, and was given a prescription for medication comparable to the

---

[2]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

medication that he had received from his heart surgeon.  Thus, Plaintiff's complaints regarding the medical care he received are based solely upon his dissatisfaction with the methods used and/or the medication prescribed.  Such complaints are not sufficient to establish an Eighth Amendment violation.  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976)(holding that a prisoner's disagreement with a course of medical treatment does not sustain a cognizable Eighth Amendment claim).

Accordingly, summary judgment should be entered in favor of Defendant Hillkirk with regard to Plaintiff's Eighth Amendment deliberate indifference claim.

### 2.    **Defendant Patty**

Plaintiff alleges that, on or about July 26, 2006, Defendant Patty authorized the DOC Defendants to strap Plaintiff in a restraint chair despite knowing of his recent heart surgery and related health problems.  However, Defendant Patty was not named as a Defendant in the original complaint, and the claim against her was raised for the first time in the Amended Complaint, which was not received from Plaintiff until March 10, 2009.  As a result, Defendant Patty argues that the claim against her is barred by the applicable statute of limitations.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions.  However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period.  Sameric Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted).  In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a § 1983 claim must be filed no later than two years from the date the cause of action accrued.  See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. 1996).  Furthermore, a claim under § 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based."  Sameric, 142 F.3d at 599.

Here, the latest date on which Defendant Patty's actions allegedly occurred was July 26, 2006, more than two and one-half years prior to the filing date of the amendment.  Thus,

Plaintiff's claims against her are time-barred unless the amendment relates back to the date the original complaint was filed, pursuant to Fed.R.Civ.P. Rule 15(c), which provides as follows:

> (c) **Relation Back of Amendments**.  An amendment of a pleading relates back to the date of the original pleading when
>
> > (1)  relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> >
> > (2)  the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> >
> > (3)  the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Initially, it is apparent that Plaintiff's claim against Defendant Patty arises out of the same conduct and occurrence set forth in the original complaint, i.e., the circumstances surrounding Plaintiff's placement in a restraint chair.  However, since Defendant Patty was brought in by amendment, Rule 15(c) requires that:  (i) she must have received notice of the institution of the action within 120 days (the period provided by Rule 4(m)) following the filing of the original complaint, and (ii) she knew or should have known that she was intended to be named as a party to the lawsuit.  Both of these requirements must be met before Plaintiff's new claim against Defendant Patty may be found to relate back to the filing of his original complaint.


**a.**      **Notice**

Plaintiff does not claim, nor is there any evidence of record indicating, that Defendant Patty ever received actual notice of the filing of the original complaint within 120 days of the

filing date.  However, it has been held that "Rule 15(c)(3) notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 195 (3d Cir. 2001), citing Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir. 1977).  "At the same time, the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action. Singletary, 266 F.3d at 195, citing Bechtel v. Robinson, 886 F.2d 644, 652 n. 12 (3d Cir. 1989).  The issue thus becomes whether Nurse Patty received constructive notice of the institution of this action such that notice may be imputed under Rule 15(c)(3).

In Singletary, the Third Circuit Court recognized two possible methods by which notice may be imputed under Rule 15(c)(3).  The first is the "shared attorney" method, which is based on the notion that when an originally named party and a party sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Singletary, 266 F.3d at 196.  The second is the "identity of interest" method, which "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 197.

### i.      Shared Attorney Method

"The relevant inquiry under this method is whether notice of the institution of this action can be imputed to [Defendant Patty] within the relevant 120 day period, ... by virtue of representation [she] shared with a defendant originally named in the lawsuit." Singletary, 266

F.3d at 196.  In this case, Alan S. Gold, Esquire ("Attorney Gold") officially entered his appearance on behalf of original Defendant Hillkirk on October 7, 2008, and has subsequently entered a special appearance on behalf of Nurse Patty in conjunction with the filing of the Medical Defendants' pending morion to dismiss.  Thus, the record reflects that new Defendant, "Patty," is represented by the same attorney as original Defendant Hillkirk.  Nevertheless, the question remains whether, by virtue of such shared representation, Defendant Patty received constructive notice of the institution of this lawsuit within the relevant 120 day period.  In this regard, "a plaintiff must show that there was 'some communication or relationship' between the shared attorney and the [newly named] defendant prior to the expiration of the 120-day period in order to avail him or herself of the shared attorney method of imputing notice."  Garvin v. City of Philadelphia, 354 F.3d 215, 225 (3d Cir. 2003), citing Singletary, 266 F.3d at 196-97.

Here, Attorney Gold represents in his brief in support of the Medical Defendants' motion to dismiss that "the individual the undersigned believes to be Patty Doe has not worked at Erie County Prison since September of 2006, no longer resides in Pennsylvania, did not know, until the filing of the amended complaint, that she might have been named, and the undersigned was not retained as her counsel until Plaintiff filed his amended complaint on March 10, well after 120 days from the filing of the original complaint." (Document # 23 at unnumbered pp. 7-8). Based on this representation, it is evident that Attorney Gold had no contact with Defendant Patty during the 120-day period following the institution of this lawsuit, such that notice may be imputed to her under the shared attorney method.

### ii.    Identity of Interests Method

Notice will also be imputed if the parties are so closely related in their business

operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation.  In this case, whatever close relationship Defendant Hillkirk and Patty may have shared while they both provided services to inmates at ECP apparently ended in September 2006, when Defendant Patty terminated her services at ECP and subsequently left the State of Pennsylvania.  This termination of services occurred well before the initiation of the instant lawsuit in July 2008.  Thus, it cannot be said that service of this lawsuit upon Defendant Hillkirk gave Defendant Patty constructive notice of this litigation under Fed.R.Civ.P. 15(c)(3).

For the foregoing reasons, there is no basis upon which Plaintiff's Eighth Amendment claim against Defendant Patty in his Amended Complaint can be found to relate back to the filing of the original complaint.  Accordingly, Plaintiff's claim against Defendant Patty is barred by the applicable two-year statute of limitations and should be dismissed.

### 3.   DOC Defendants

#### a.   Retaliation Claim

Plaintiff alleges that Defendants Olowin, Damper, and Parks "retaliated against [him] for insisting on wanting to exercise his right to file a grievance by fabricating misconduct reports to effectuate physical abuse, and cruel and unusual punishment...." (Amended Complaint at ¶ 39).

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523,

530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[3]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, it is evident that Plaintiff has sufficiently alleged a *prima facie* case of retaliation, based on the following:  (i) his exercise and/or expressed desire to exercise his right to file a

---

3

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.  See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

grievance is a constitutionally protected activity; (ii) the named Defendants' alleged fabrication of misconduct reports, physical abuse, and placement of Plaintiff in a restraint chair, are all sufficient to establish "adverse action" at the hands of prison officials; and (iii) Plaintiff's insistence on exercising his right to file a grievance was the triggering point for the successive actions allegedly taken by Defendants Olowin, Damper, and Parks that ultimately led to him being strapped in a restraint chair.  Thus, it is the DOC Defendants' burden to establish by a preponderance of the evidence that they would have taken the same actions absent Plaintiff's protected conduct for reasons reasonably related to a legitimate penological interest.

In this regard, the DOC Defendants contend that Plaintiff was not ultimately "restrained because he attempted to exercise his First Amendment right to grieve; rather, [Plaintiff] was restrained because he abused prison policy, engaged in conduct involving physical violence toward himself, threatened physical violence on correctional officers, was unruly and disruptive, refused to obey commands, and caused a disruption for the entire cell block." (Document # 26, DOC Defendants' Brief, at p. 8).  In support of this contention, the DOC Defendants have submitted copies of two misconduct reports, seven information reports, and a "report of extraordinary occurrence," all of which demonstrate that Plaintiff, at various times, became belligerent when he insisted on filing a grievance; began threatening correctional officers and shouted profanities at them while punching and pounding on his cell door; and refused to comply with a strip search, during which he became agitated and began striking his own face and head. (Document # 13, Exhibits C, D, E, G).

Based on the foregoing uncontradicted evidence of record, the Court finds that the DOC Defendants have met their burden of proving that they would have taken the same actions in response to Plaintiff's behavior, without regard to the fact that Plaintiff was attempting to engage

in the protected conduct of filing a grievance.  In addition, Plaintiff has not contradicted this account with his own evidence.  Accordingly, summary judgement should be entered in favor of Defendants Olowin, Damper, and Parks with regard to Plaintiff's retaliation claim.

## **b.      Excessive Use of Force**

Plaintiff alleges that Defendants Olowin, Johnson, Ames, Yeaney, Kremenik, Loftus, and Danowski subjected him to "actions of physical brutality and the misuse of force ... without need or provocation" in violation of his Eighth Amendment rights. (Amended Complaint at ¶ 43).  In particular, Plaintiff claims that:  (i) Defendant Olowin "physically assaulted" him by "dragging, punching, and slamming [him] against the wall causing him to hit his head" (Id. at ¶ 22); (ii) the cell extraction team wrestled him to the ground "by excessive force..., nearly breaking [his] arm handcuffing him without any resistance..." (Id. at ¶ 27); (iii) Defendants "used a protective shield in a slamming like motion, and thus forcing [him] into the 'Restraint Chair'" (Id. at ¶ 28); and (iv) Defendants "strapped and cuffed [him] to the 'Restraint Chair' in such a manner that the restraints cut off the circulation through his arms and legs," and "subsequently wheeled [him] into the isolation cell face forward forcibly injuring [his] left hand because the chair barely cleared the entrance of the doorway" (Id. at ¶ 29).

"In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." Wilson v. Shannon, 982 F.Supp. 337, 340 (E.D.Pa. 1997), citing Hudson v. McMillian, 503 U.S. 1, 7 (1992).  However, *de minimis* uses of physical force are excluded from constitutional recognition, provided that the use of force is not  "'repugnant to the conscience of mankind.'"

Whitley v. Albers, 475 U.S. 312, 327 (1986), quoting, Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Reyes v. Chinnici, 54 Fed. Appx. 44, 48 (3d Cir. 2002)("[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically").

Here, all of the alleged actions of the DOC Defendants occurred during the extraction and transport of Plaintiff from his cell to protective custody, and the subsequent placement of Plaintiff in the restraint chair, on July 26, 2006. (Document # 13, Exhibit F).  In response to Plaintiff's allegations of excessive force, the DOC Defendants have submitted for this Court's review a DVD recording of the events at issue.  After reviewing the DVD, the Court has found no evidence to support Plaintiff's allegations of excessive force.  In particular, there is no evidence of the described physical assault by Defendant Olowin, nor is there any indication that Plaintiff was wrestled to the ground by the cell extraction team in such a manner that his arm was "nearly broken."  Furthermore, the DVD evidences the fact that Plaintiff was gently guided into the restraint chair by an officer using a protective shield, and after Plaintiff was strapped in, the restraints were checked by a nurse to determine if they were too tight.  Thus, there is simply no evidence to support anything more than a *de minimis* use of force by the officers involved.  Accordingly, summary judgment should be entered in favor of Defendants Olowin, Johnson, Ames, Yeaney, Kremenik, Loftus, and Danowski with regard to Plaintiff;'s excessive use of force claim.


### 4.      Cruel and Unusual Punishment

Plaintiff claims that he was "torturiouly [sic] strapped in that 'Restraint Chair' for approximately (15½) hours, and at no time was the Plaintiff feed [sic], given any of his

prescribed medication, or allowed to used [sic] the bathroom, but instead was physically, mentally and emotionally abused by the Defendants." (Amended Complaint at ¶ 49).

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, clothing, shelter, and medical care. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

The Third Circuit has recognized that an inmate's claim concerning his time in restraints is to be analyzed as a conditions of confinement claim. See Blakeney v. Dauphin County Prison, 156 Fed.Appx. 520 (3d Cir. 2005); Camp v. Brennan, 54 Fed.Appx. 78 (3d Cir. 2002); Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In Camp, the Plaintiff, who had provoked a violent disturbance, complained that restraining him on a table for two days, while naked, violated his Eighth Amendment rights. Camp, 54 Fed. Appx. at 80. The Court entered judgment in favor of the defendants, finding that: (i) the plaintiff was fed; (ii) his clothes were removed to ensure that he didn't have a weapon or contraband; (iii) he was naked because he chose to

remove a blanket that the defendants used to cover him; and (iv) he was shackled to ensure the safety of himself, the guards and the medical personnel who examined him.  Id. at 81.

Similarly, in Fuentes, the Third Circuit upheld a summary judgment finding in favor of defendants charged with violating the plaintiff's Eighth Amendment rights for placing him in a restraint chair for eight hours, concluding that the plaintiff was not denied a basic human need, nor were prison officials deliberately indifferent, because:  (i) Plaintiff's physical condition was checked every fifteen minutes; (ii) he was released to stretch, exercise, and use the toilet; (iii) he was given meals; and (iv) he was examined by medical staff.

Finally, in Blakeney, a case factually similar to the instant case, the plaintiff claimed that prison officials violated his Eighth Amendment rights by improperly placing him in a restraint chair, and by subjecting him to mace and verbal and physical abuse.  Like Plaintiff in this case, Blakeney was recovering from various physical injuries and/or medical conditions, when he became violent and aggressive with correctional staff.  Blakeney was confined to a restraint chair for fourteen hours, then released, only to be re-confined in the chair another 2-3 hours after acting up again.  After reviewing prison records, including a number of videotapes of Blakeney's confinement in the restraint chair, the district court found that Blakeney was continuously and systematically monitored by prison officials and medical staff during his time in the restraint chair.  The Blakeney court also found that the amount of force used was reasonable "given the threat Plaintiff's behavior posed to his own safety, as well as the safety of the staff."

Here, the DOC Defendants have submitted a restraint chair log, as well as a DVD recording of a period of time Plaintiff was confined in the restraint chair, nurse notes, and information reports, all documenting Plaintiff's treatment and behavior during his time in the restraint chair. (Document # 13, Exhibits F, I, J, M).  The DVD recording evidences the fact that

Plaintiff was naked, but covered with a blanket when he was placed in the chair, and his restraints were checked by a nurse to ensure they were not too tight.  The DVD also shows Plaintiff becoming increasingly hostile and threatening, spitting at the camera, and exhibiting somewhat manic behavior.  The restraint chair log shows that Plaintiff's condition was checked every fifteen minutes by correctional staff and/or medical staff while he was in the chair. (Document # 13, Exhibit I).  Information reports reveal that Plaintiff was offered breaks to eat, stretch or use the bathroom, but he refused the offers and also refused to take medication that was offered. (Document # 13, Exhibit J).  In fact, the nurse's notes reveal that Plaintiff told Defendant Patty that he would not eat or drink anything while in RHU. (Document # 13, Exhibit M at p. 3).

Based on the foregoing evidence and case law, it is apparent that Plaintiff was closely monitored by the DOC Defendants and medical staff while he was in the restraint chair, and was not denied "the minimal civilized measure of life's necessities," other than those Plaintiff voluntarily refused to accept.  Based on this record, the Court finds no evidence to support Plaintiff's claim of cruel and unusual punishment and summary judgment should be entered in favor of the DOC Defendants in this regard.

## 5.   Negligent Infliction of Emotional and Mental Distress

Plaintiff asserts a claim of negligent infliction of emotional and mental distress against all Defendants, for actions that he characterizes as "malicious, willful, wanton, outrageous, in the extreme and intolerable in a civilized society," and "specifically calculated to cause serious mental distress too the Plaintiff." (Amended Complaint at ¶ 52).  This claim is a pendent state law claim under Pennsylvania law, over which this Court is not required to exercise jurisdiction

absent the existence of a cognizable federal claim.  Since this Court has already determined that

Plaintiff's federal claims under 42 U.S.C. § 1983 must fail as a matter of law, this Court does not

have an independent basis on which to exercise jurisdiction over Plaintiff's state law claim.  As a

result, Plaintiff's state law negligence infliction of emotional and mental distress claim should be

dismissed.


**III.**     **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that:

    1.    Defendants Hillkirk and Patty's Motion to Dismiss Amended Complaint [Document # 22] be granted;

    2.    The Motion to Dismiss Amended Complaint filed on behalf of Defendants Erie County Prison, Veshecco, Wilson, Olowin, Aganello, Ricci, Ames, Owens, Johnson, Yeaney, Kremenik, Danowski, Loftus, Parks, and Damper [Document # 25] be granted; and

    3.    The case be marked as closed.


In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C),

and Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed

ten (10) days from the date of service to file written objections to this report.  Any party

opposing the objections shall have ten (10) days from the date of service of objections to

respond thereto.  Failure to timely file objections may constitute a waiver of some

appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated: November 30, 2009

cc:     The Honorable Sean J. McLaughlin
        United States District Judge